IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HAVTECH, LLC,

                  **Plaintiff,**

     **v.**

TOBEY-KARG SALES AGENCY, INC.,

                  **Defendant.**

**Civil No.: 1:22-cv-01051-JRR**

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on Plaintiff Havtech, LLC's ("Havtech") Motion for Summary Judgment and Defendant Tobey-Karg Sales Agency, Inc.'s ("TKSA") Cross-Motion for Partial Summary Judgment. (ECF Nos. 61 and 62; respectively, "Havtech Motion" and "TKSA Cross-Motion"). The court has reviewed all papers, and no hearing is necessary. Local Rule 105.6 (D. Md. 2023).

## I.    <u>BACKGROUND</u>

On April 28, 2022, Havtech filed suit against TKSA asserting six breach of contract claims. (ECF No. 1 ¶¶ 16-45.) On June 10, 2022, the court issued a scheduling order. (ECF No. 13.) On March 31, 2023, Havtech filed a motion to amend the complaint, seeking to add an alternative theory of liability (unjust enrichment), which the court granted.[1] (ECF Nos. 29, 55, and 56.)

The Amended Complaint sets forth seven counts: Breach of Contract—The Smithsburg High School HVAC Renovations Project (Count I); Breach of Contract—The Morgan State Thurgood Project (Count II); Breach of Contract—The Pepco Takoma Park Project (Count III);

---

[1] This case was reassigned to the undersigned on January 31, 2024.

Breach of Contract—The DC Prep Project (Count IV); Breach of Contract—The Brunswick Elementary School Project (Count V); Breach of Contract—The Nice Middleton Project (Count VI); and Unjust Enrichment—The Brunswick Elementary School Project (Count VII).  (ECF No. 57; the "Amended Complaint.")

On October 6, 2023, Havtech filed the Havtech Motion seeking summary judgment as to Counts I through VI of the Amended Complaint.  (ECF No. 61.)  On November 10, 2023, TKSA filed its response in opposition to the Havtech Motion and the TKSA Cross-Motion seeking partial summary judgment as to Counts V and VII of the Amended Complaint.  (ECF No. 62.)

## II.   UNDISPUTED MATERIAL FACTS

Havtech and TKSA market and sell commercial HVAC equipment.   (Amended Complaint, ECF No. 57 ¶¶ 1-2; TKSA's Cross-Mot., ECF No. 62-1 at 5.)  Havtech and TKSA were authorized sales representatives for the same third party, AAON, Inc.  (Amended Complaint, ECF No. 57 ¶ 6; TKSA's Cross-Mot., ECF No. 62-1 at 5.)   TKSA remains an AAON sales representative.  (TKSA's Cross-Mot., Aff. of Rich Nalevanko, Exhibit D, ECF No. 62-6 ¶ 3); Havtech served as a AAON sales representative until its termination on January 14, 2022. (TKSA's Cross-Mot., Termination Letter, Exhibit E, ECF No. 62-7.)

### 1.   Policy Manual

AAON issued a Policy Manual for Sales Representatives, titled "Policy Defining the Relationship Between the Independent Manufacturers Representative and AAON, Inc."  ("Policy Manual").  (TKSA Cross-Mot., Policy Manual, Exhibit G, ECF No. 62-9.)[2] AAON and its sale representatives use a type of sales transaction, referred to as a "Buy-Resell," whereby a sales representative purchases the equipment from AAON and, in turn, sells it to the customer.

---

[2] For clarity, where possible, throughout this memorandum, citation to document page numbers refer to the page number within the original source, not pagination assigned by the ECF system.

(Amended Complaint, ECF No. 57 ¶ 9; Havtech Mot., Larry Manross Dep., Exhibit 7, ECF No. 61-9 at 49:6-18.)  In some instances, projects "are specified and/or bid and/or ordered from more than one Representative's territory." These are known as "Multi-Territorial Orders."  (TKSA Cross-Mot., Policy Manual, Exhibit G, ECF No. 62-9 at 16.).

With regard to Multi-Territorial Orders, the Policy Manual provides:

### **<u>Multi-Territorial Orders</u>**

Projects that are specified and/or bid and/or ordered from more than one Representative's territory **must** be taken in the **<u>company's name</u>** with the commission dollars distributed by the company to all reps involved. Buy/Resell is not allowed for multi-territory [unless written consent is provided by all reps to Order Entry at the time the order is placed]. AAON requires a copy of a signed Multi-Territory Agreement form (provided in this document) to be included with an order that has a commission split. If the Multi-Territory form is not provided at the time the order is placed, Order Entry will process the order but will not send the order to Engineering for processing.

All commission split percentages must appear on the order form in the .aef file. All split commission projects require communication between all parties involved, prior to bidding, in order to establish minimum/maximum commission guidelines and other pertinent bidding information. A form is attached for use by the specifying Rep to request commission division for a job in another territory. The form must be sent to both AAON and the Rep bidding the job. **AAON accepts no responsibility** for initializing communication between either the Rep calling on the specifying engineer or the Rep bidding the job. **Failure to communicate this information will increase the possibility of unpaid commissions**. It is required that all parties involved sign the agreement portion of the form. The rep must send copies of the signed form to the applicable AAON regional managers. **<u>A copy of the signed form must be provided at the time the order is placed.</u>** Failure to provide Multi-Territory form at time of order entry may result in forfeiture of commissions. AAON will honor all such agreements and disperse commissions in accordance with the agreement after AAON has been paid in full.

(Policy Manual, ECF No. 62-9 at 16.)

The Policy Manual further provides:

**Notification**

In order for a Representative to claim Engineer Specification credit or Owner Specification credit, a "Multi-Territory Job Notification Form" must be sent to the Representative in whose territory the job will be bid prior to job bidding, stating the location of the job, the equipment being specified, and the approximate date the job will be bidding. A copy of this form must also be sent to AAON Regional Manager for each affected territory. A preliminary agreement should be made prior to bidding and a final agreement made after completion of the bidding process. This allows for the documentation of the bidding process and any changes that may occur. In the event a Multi-Territory Job Notification Form has not been received by the bidding representative(s), it shall be the responsibility of the bidding representative(s) in the job location territory or other territory to contact the Engineering Representative prior to bidding or quoting the job, by locating the Engineering-Architectural firm to determine where the project originated. In situations where there are Government entities (i.e., the US Army Corps of Engineers), the bidding representative(s) shall inform their local Regional Manager who will then send out an email to the principals in their territories prior to bidding or quoting the job for the purpose of executing the Multi-Territory Job Notification Form.

*Id.* Further, the Policy Manual provides a template for use in connection with a "Multi-Territory Job Notification and Agreement" ("MTA"). *Id.* at 19.

## 2.   **MTAs**

This case arises out of six MTAs between Havtech and TKSA. (Amended Complaint, ECF No. 57 ¶ 14.) Each MTA at issue involves a "Buy-Resell" transaction, where Havtech worked with the project engineer and TKSA worked with the contractor. (Havtech Mot., Larry Manross Dep., Exhibit 7, ECF No. 61-9 at 43:19-44:5.) In Buy-Resell transactions, the manufacturer's representative that works with the contractor (here, TKSA) issues a purchase order "at the cost value to the manufacturer" (here, AAON). *Id.* at 49:8-11. The manufacturer's representative that works with the contractor receives a purchase order from the contractor at a higher value, "and the delta between the two is the margin on the project." *Id.* at 49:11-14. Some of that margin is due

to the manufacturer's representative that works with the engineer (here, Havtech), and some of it is due to the manufacturer's representative that works with the contractor (here, TKSA). *Id.* at 49:14-18.  In Buy-Resell transactions, commissions are not paid by AAON; rather, commissions are decided between the representatives on their own and agreed upon through the MTA process. (Manross Dep. 109:15-22.)   Typically, an MTA undergoes several iterations.  (Manross Dep. 68:21-69:1, 71:5-10.)

As set forth above, six MTAs are at issue in the instant case.  The Smithsburg High School HVAC Renovations MTA ("Smithsburg MTA") provides as follows:

<u>Multi-Territory Job Notification and Agreement</u>

| To: | Jeff Cox - Havtech | Date: | 4/18/2021 |
|---|---|---|---|

| From: | Dan Gardner |
|---|---|
| Company: | Tobey-Karg Sales Agency |
| Address: | 4640 Campbells Run Road |
| Phone: | 412-787-3899 |
| Fax: | |

| | | |
|---|---|---|
| 1. Job Name: | | Smithsburg HVAC Renovations |
| City, State: | | Smithsburg, MD |
| 2. Equipment Specified | | 12 AAON RTUs |
| 3. Engineering Firm: | | Kibart |
| Project Engineer: | | S. Brzezenski |
| City, State: | | Baltimore MD |
| 4. Bid Date: | | 3/15/2021 |
| 5. Anticipated Bid Price: | $ | 1,100,000.00 |
| 6. Total delivered price to the contractor: | $ | 1,100,000.00 |
| 7. Owner credit requested: | | 0 |
| 8. Specification credit requested: | | 50/50 |
| 9. Estimated commission due my company: | | |
| 10. Successful Mechanical Contractor: | | RH Lapp |
| City, State: | | Cumberland MD |

Please advise should you have any questions regarding our estimate or disagree with the requested specification credit.

Thank you for your cooperation, and good luck.

**AGREEMENT**

If order is entered as buy/resell please sign to approve:  Rep #2    Dan Gardner Tobey-Karg
Rep #3    Jeff Cox - Havtech

I agree with above Commission Division(s):

| | Company | % Credit | Signed | | Date: |
|---|---|---|---|---|---|
| Rep #1: | | | | Date: | |
| Rep #2: | Tobey-Karg | 50 | Dan Gardner | Date: | 2/16/2021 |
| Rep #3: | Havtech | 50 | Jeff Cox | Date: | 2/16/2021 |

CC:  Regional Sales Manager:
Reg Mgr #1:
Reg Mgr #2:
Reg Mgr #3:

(Havtech Mot., Smithsburg MTA, Exhibit 1, ECF No. 61-3.)

The Morgan State Thurgood MTA ("Thurgood MTA") provides as follows:

962 818
962 832

## Multi-Territory Job Notification and Agreement

Commission Division

| | | | |
|---|---|---|---|
| To: | HAVTECH-JEFF COX | Date: | 5/6/2021 |

From: MIKE SEARS
Company: TOBEY KARG SALES
Address: 4640 CAMPBELLS RUN RD
Phone: 412-787-3899
Fax:

1. Job Name: MSU THURGOOD
   City, State: BALTIMORE, MD 21214
2. Equipment Specified AAON
3. Engineering Firm: BALA
   Project Engineer:
   City, State: BALTIMORE, MD
4. Bid Date:
5. Total delivered price to the contractors: $639,500
6. Specification credit requested: 50%
7. Estimated commission due my company: $97,250
8. Successful Mechanical Contractor: WG TOMKO
   City, State: FINNLEYVILLE, PA

Please advise should you have any questions regarding our estimate or disagree with the requested specification credit.

Thank you for your cooperation, and good luck.

### AGREEMENT

I agree with above Commission Division(s):

| | Company | Signed | | Date |
|---|---|---|---|---|
| Rep #1: | TKS | *MIKE SEARS* | Date: | 5/6/2021 |
| Rep #2: | HAVTECH | *Jeff Cox* | Date: | 5/10/2021 |
| Rep #3: | | | Date: | |

CC: Regional Sales Manager:
Reg Mgr #1: MATT JONES
Reg Mgr #2:
Reg Mgr #3:

(Havtech Mot., Thurgood MTA, Exhibit 2, ECF No. 61-4.)

The Pepco Takoma Park MTA (the "Pepco MTA") provides as follows:

*234765*

## Multi-Territory Job Notification and Agreement

To: _Havtech_  Date: _11-24_
From: _Mike Sarro_
Company: _Thermflow_
Address: _____
Phone: _____
Fax: _____

1. Job Name: _Pepco_   Equip = $12,461
   City, State: _Takoma Park MD_   Fix = $1,600
                                    Sw = at $2000
2. Equipment Specified: _Arrow MD/Split_   Hermar $1000
                        _____   cost = $16,661
                        _____   Bill = $6,357
                                           Havtech/TK = $3142 each

3. Engineering Firm: _Setty_
   Project Engineer: _____
   City, State: _____
4. Bid Date: _____
5. Anticipated Bid Price: _____
6. Total delivered price to the contractor: $_23,000_
7. Owner credit requested: _50/50_
8. Specification credit requested: _50/50_
9. Estimated commission due my company: _____
10. Successful Mechanical Contractor: _Talko_
    City, State: _Pittsburgh PA_

Please advise should you have any questions regarding our estimate or disagree with the requested specification credit.

Thank you for your cooperation and good luck.

| Agreement | | | | |
|---|---|---|---|---|
| If order is entered as buy/resell, please sign to approve | | Rep #2 _____ | | |
| | | Rep #3 _____ | | |
| I agree with the above Commission Division(s): | | | | |

| | Company | % credit | Signed | Date |
|---|---|---|---|---|
| Rep #1 | _Thermflow_ | 50 | _[signature]_ | 11-25-20 |
| Rep #2 | _Havtech_ | 50 | _Paul Potter_ | Nov 30, 2020 |
| Rep #3 | | | | |

| CC: Regional Sales Manager: | |
|---|---|
| Reg Mgr #1 | _Matt Jones_ |
| Reg Mgr #2 | |
| Reg Mgr #3 | |

(Havtech Mot., Pepco MTA, Exhibit 3, ECF No. 61-5.)

7

The Nice Middleton MTA provides as follows:

234108
339107

### Multi-Territory Job Notification and Agreement

#### Commission Division

| | | | |
|---|---|---|---|
| To: | Havtech | Date: | 8/31/2021 |

| | |
|---|---|
| From: | MIKE SEARS |
| Company: | TK SALES |
| Address: | 4640 CAMPBELLS RUN RD |
| Phone: | 412-443-8781 |
| Fax: | |

1. Job Name:      NICE MIDDLETON
   City, State:
2. Equipment Specified      AAON
3. Engineering Firm:      JMT
   Project Engineer:
   City, State:
4. Bid Date:      31-Aug-21
5. Total delivered price to the contractors:      $89,650
6. Specification credit requested:      50%
7. Estimated commission due my company:      $10,405
8. Successful Mechanical Contractor:      Tomko
   City, State:      Finnleyville, PA

Please advise should you have any questions regarding our estimate or
disagree with the requested specification credit.

Thank you for your cooperation, and good luck.

| | |
|---|---|
| POLICE-AAON | $25,708.00 |
| MAINT-AAON | $25,708.00 |
| 4 SENSORS-Watmaster | $820.00 |
| 2 Touchscreens -Watmaster | $1,255.00 |
| Freight Estimated | $4,000.00 |
| Start-up Estimated | $4,000.00 |
| Labor Warranty Extension 2 years | $6,500.00 |
| 2 disconnects for AHU | $350.00 |
| 1 set of spare filters | $500.00 |
| | |
| Cost | $68,841.00 |

#### AGREEMENT

I agree with above Commission Division(s):

| | Company | Signed | Date: | |
|---|---|---|---|---|
| Rep #1: | Tobey-Karg Sales | *Mick Sears* | Date: | 8/31/2021 |
| Rep #2: | Havtech | *Rod Hollenberger* | Date: | 8/31/2021 |
| Rep #3: | | | Date: | |

CC: Regional Sales Manager:
Reg Mgr #1:
Reg Mgr #2:
Reg Mgr #3:

(Havtech Mot., Nice Middleton MTA, Exhibit 6, ECF No. 61-8.)

The Brunswick Elementary MTA ("Brunswick MTA") provides as follows:

## Multi-Territory Job Notification and Agreement

### Commission Division

| | | | |
|---|---|---|---|
| To: | Dan Gardner / Tobey-Karg | Date: | 11/30/2021 |

| | |
|---|---|
| From: | Dave Doughty |
| Company: | Havtech |
| Address: | 9505 Berger Road, Columbia, MD |
| Phone: | 443-832-1697 |
| Fax: | |

| | |
|---|---|
| 1. Job Name: | Brunswick Elementary School |
| City, State: | Brunswick, MD |
| 2. Equipment Specified | V3/CFA Split Systems |
| 3. Engineering Firm: | Alban Engineering |
| Project Engineer: | Parvaneh Famili |
| City, State: | Cockeysville, MD |
| 4. Bid Date: | 11/16/2021 |
| 5. Total delivered price to the contractors: | $1,033,000 |
| 6. Specification credit requested: | 50% |
| 7. Estimated commission due my company: | $287,746.00 |
| 8. Successful Mechanical Contractor: | RH Lapp & Sons |
| City, State: | Cumberland, MD |

Please advise should you have any questions regarding our estimate or disagree with the requested specification credit.

Thank you for your cooperation, and good luck.

### AGREEMENT

I agree with above Commission Division(s):

| | Company | Signed | | Date |
|---|---|---|---|---|
| Rep #1: | Dave Doughty | | Date: | 11/30/2021 |
| Rep #2: | Dan Gardner | | Date: | 11/30/2021 |
| Rep #3: | | | Date: | |

CC: Regional Sales Manager:
| | |
|---|---|
| Reg Mgr #1: | Matt Jones |
| Reg Mgr #2: | |
| Reg Mgr #3: | |

(Havtech Mot., Brunswick MTA, Exhibit 5, ECF No. 61-7.)

The DC Prep MTA provides as follows:

## Multi-Territory Job Notification and Agreement

| | |
|---|---|
| To: | Mike Sears |
| From: | David Cunningham |
| Company: | Havtech Inc |
| Address: | 9505 Berger Rd Columbia, MD 20852 |
| Phone: | 443-832-1729 |
| Fax: | |

Date: Nov 8, 2021

101 24 37

1. Job Name: DC Prep Wilkerson
   City, State: Washington, DC

2. Equipment Specified: Axiom RW and RO

3. Engineering Firm: Setty
   Project Engineer: Izak Calle
   City, State: Fairfax, VA
4. Bid Date: Nov 8, 2021
5. Anticipated Bid Price: $510,000
6. Total delivered price to the contractor: $510,000
7. Owner credit requested:
8. Specification credit requested: 50%
9. Estimated commission due my company: $ 91,815
10. Successful Mechanical Contractor: Tomko
    City, State:

Please advise should you have any questions regarding our estimate or disagree with the requested specification credit.

Thank you for your cooperation and good luck.

☐ Preliminary Agreement        ☑ Final Agreement

I agree with the above Commission Division(s):

| | Company | % credit | Signed | Date |
|---|---|---|---|---|
| Rep #1 | Havtech | 50 | *Paul Cotton* | Nov 8, 2021 |
| Rep #2 | TOBEY KARG SALES | 50 | MIKE SEARS | 1-25-22 |
| Rep #3 | | | | |

CC: Regional Sales Manager:
| | |
|---|---|
| Reg Mgr #1 | |
| Reg Mgr #2 | |
| Reg Mgr #3 | |

(Havtech Mot., DC Prep MTA, Exhibit 4, ECF No. 61-6.)

## III.   **LEGAL STANDARDS**

### Federal Rule of Civil Procedure 12(b)(1)

Although TKSA does not reference Rule 12(b)(1), TKSA argues that the Brunswick MTA is not ripe for adjudication.  (ECF No. 62-1 at 21-22.)  Therefore, the court proceeds through a Rule 12(b)(1) analysis for completeness.

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016).

Subject matter jurisdiction involves a court's power to hear a case; it may not be forfeited or waived. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)). "Ripeness implicates the court's subject matter jurisdiction, *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019), and 'questions of subject-matter jurisdiction may be raised at any point during the proceedings and may (or, more precisely, must) be raised *sua sponte* by the court[.]'" *Suchin v. Fresenius Med. Care Holdings, Inc.*, No. CV JKB-23-01243, 2024 WL 449322, at *4 (D. Md. Feb. 6, 2024) (quoting *Brickwood Contractors, Inc. v. Datanet Engineering, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004)). "Notably, a claim is not ripe for judicial review if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Maryland v. United States*, 360 F. Supp. 3d 288, 305 (D. Md. 2019) (citations omitted). "In other words, the ripeness requirement is designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreement[.]" *Id.* (citations omitted). A plaintiff bears the burden to demonstrate "that the claim is ripe." *Wild Virginia v. Council on Env't Quality*, 56 F.4th 281, 293 (4th Cir. 2022).

**Federal Rule of Civil Procedure 56**

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether

sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  *Id*. at 249.   Trial courts in the Fourth Circuit have an "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).  This court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

In undertaking this inquiry, the court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007).  Thea court "must not weigh evidence or make credibility determinations." *Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 248 (4th Cir. 2015) (citing *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007)); *see also Jacobs v. N.C. Adin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015) (explaining that the trial court may not make credibility determinations at the summary judgment stage).  Indeed, it is the function of the fact-finder to resolve factual disputes, including issues of witness credibility. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866-68 (2014).

When adverse parties file cross-motions for summary judgment, as is the case here, this court applies the same standard of review to both motions, considering "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007).  "[B]y the filing of a motion [for summary judgment,] a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted." *Brown v. Perez*, 835 F.3d 1223, 1230 n.3 (10th Cir. 2016) (citation omitted);

*see also Sherwood v. Washington Post,* 871 F.2d 1144, 1148 n.4 (D.C. Cir. 1989) ("[N]either party waives the right to a full trial on the merits by filing its own motion.").  "However, when cross-motions for summary judgment demonstrate a basic agreement concerning what legal theories and material facts are dispositive, they 'may be probative of the non-existence of a factual dispute.'" *Syncrude Canada Ltd. v. Highland Consulting Group, Inc.*, 916 F. Supp. 2d 620, 624 (D. Md. 2013) (quoting *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983)).

## IV.   ANALYSIS

### A.   Ripeness—Rule 12(b)(1)

TKSA argues that the Brunswick Project is not ripe for adjudication because it rests upon contingent future events that may not occur as planned.  (ECF No. 62-1 at 21-22.)

"Because ripeness is a Constitutional limitation on federal court jurisdiction, ripeness presents the threshold question whether a claim is justiciable." *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 206 (4th Cir. 2022).  "Whether a claim is ripe is a legal question governed by federal law." *Beatley v. Ayers*, 851 F. App'x 332, 336 (4th Cir. 2021).  In *Whitaker*, the Fourth Circuit explained:

> The doctrine of ripeness arises from the case or controversy requirement of Article III. *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013); *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019).  A case is not ripe for judicial determination "if the plaintiff has not yet suffered injury and any future impact remains wholly speculative." *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) (citation and internal quotation marks omitted). In contrast, a case is ripe for judicial decision when the "controversy is final and not dependent on future uncertainties." *Id.* (citation omitted). Thus, when a claim is "presented in a clean-cut and concrete form," the issue is ripe for adjudication. *South Carolina*, 912 F.3d at 730 (citation omitted). The plaintiff bears the burden of establishing ripeness. *Doe*, 713 F.3d at 758.

42 F.4th at 206.  "In reviewing a ripeness claim, [the court] consider[s] (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration."  *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183 (4th Cir. 2018).

TKSA's ripeness argument as to the Brunswick Project breach of contract claim is misplaced.  Havtech provides evidence that TKSA failed to abide by the terms of the Brunswick MTA and maintains that TKSA failed to split the commission on a 50/50 basis.  (Havtech's Mot., Daniel Gardner Dep., Exhibit 10, ECF No. 61-12 at 122:5-123:5.)  That the Brunswick Project remains open and future expenses might be incurred does not render Havtech's injury "wholly speculative or 'rest[ing] upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Wild Virginia v. Council on Env't Quality*, 56 F.4th 281, 295 (4th Cir. 2022) (quoting *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019)).   Indeed, there is no dispute that TKSA received its 50/50 commission split on the Brunswick Project in 2023 (Gardner Dep. 127:9-13), and no record evidence suggests that future events on the Brunswick Project will affect Havtech's entitlement to the 50/50 commission split.  Accordingly, Havtech's breach of contract claim as to the Brunswick Project is ripe for adjudication.

### B.    TKSA Cross-Motion

TKSA seeks summary judgment on Counts V and VII of the Amended Complaint for the same reasons it opposes Havtech's Motion.  The court addresses TKSA's Cross-Motion first.  (ECF No. 62-1 at 25.)  TKSA argues that it is entitled to summary judgment because Havtech failed to comply with certain provisions of the Policy Manual and failed to adhere to AAON's termination procedure.  *Id.* at 7-13, 27-28.

### 1.    *AAON Policy Manual*

TKSA argues that because Havtech alleges a commission dispute and "failed to exhaust its internal review remedies," Havtech cannot pursue its claims in a judicial forum.  (ECF No. 62-1 at 7-13.)  Specifically, TKSA contends that the Policy Manual "provides a comprehensive dispute resolution procedure in the event that sales representatives cannot resolve a commission dispute." *Id.* at 8.

"Before one can enforce a contract, [] whether as a party to the contract or as a third-party beneficiary, there must be a contract to enforce."  *Dickerson v. Longoria*, 414 Md. 419, 452 721 (2010).  Even assuming the Policy Manual created a contract between AAON and Havtech, TKSA fails to generate a dispute of material fact as to whether the Policy Manual bars Havtech's claims.

"At common law, only a party to a contract could bring suit to enforce the terms of a contract."  *120 W. Fayette St., LLLP v. Mayor of Balt.*, 426 Md. 14, 35 (2012).  "The common law rule has expanded to permit 'third-party beneficiaries' to bring suit in order to enforce the terms of a contract."  *Id.* at 35-36 (quoting *Dickerson v. Longoria*, 414 Md. 419, 452 (2010)).  In *120 W. Fayette*, the Supreme Court of Maryland explained:

> "An individual is a third-party beneficiary to a contract if 'the contract was intended for his [or her] benefit' and 'it . . . clearly appear[s] that the parties intended to recognize him [or her] as the primary party in interest and as privy to the promise.'" *Id.*, 995 A.2d at 741 (quoting *Shillman v. Hobstetter*, 249 Md. 678, 687, 241 A.2d 570, 575 (1968)) (alterations in original). It is not enough that the contract merely operates to an individual's benefit: "An incidental beneficiary acquires by virtue of the promise no right against the promisor or the promisee." *Lovell Land, Inc. v. State Highway Admin.*, 408 Md. 242, 261, 969 A.2d 284, 295 (2009) (citation omitted).

*Id.*

"The crucial fact in determining whether a third party is an intended beneficiary of a contract is whether the pertinent provisions in the contract were inserted . . . to benefit the third party." *CX Reinsurance Co. Ltd. v. Johnson*, 481 Md. 472, 487 (2022) (citations omitted). "Another factor to consider . . . is whether the third party is named in the contract or its antecedent agreements." *Id.* (citations omitted). "In applying this standard, [the court] look[s] to the intention of the parties to recognize a person or class as a primary party in interest as expressed in the language of the instrument and consideration of the surrounding circumstances as reflecting upon the parties' intention[.]" *CR-RSC Tower I, LLC v. RSC Tower I, LLC*, 429 Md. 387, 458 (2012).

TKSA argues that "[t]he Policy Manual contains provisions that either party could invoke against the other." (ECF No. 64 at 5). The court disagrees. The Policy Manual, titled "Policy Defining the Relationship Between the Independent Manufacturers Representative and AAON, Inc.," provides in relevant part:

> **Commission orders**
>
> The following guidelines have been established pertaining to the distribution of commissions on AAON sales. AAON, Inc. reserves the right to have final judgment in all commission disputes and/or disagreements between Representative firms and/or AAON. Under no circumstances will AAON be liable for more than the full commission for any specific order. No commission will be paid to the Representative for warranty parts. **This section does not apply to National Account Sales.**
>
> **Buy-Resell**: The Representative will be given a "Net Cost Multiplier" for the Company's List Price from MON ECat. At this net cost, if the Representative can qualify under the Company's credit terms and "Terms and Conditions of Sale", the Representative may purchase AAON products, which have been specified and will be sold in the Representative's territory. The Representative may resell said products to his customer. Under these conditions, no commission will be due the representative.

(TKSA Mot., AAON Policy Manual, Exhibit G, ECF No. 62-9, at 16.)

Also relevant here, the Policy Manual further provides:

> **Commission Disputes**: In the event that split commission disputes or infraction disputes arise and cannot be resolved through communication and review by the Regional Manager(s), they shall be referred to the Director of Sales for resolution. The Director of Sales, in consultation with the Regional Manager(s), will decide the dispute, or the Director of Sales may form a review panel consisting of members appointed by the Rep Council and AAON employees to decide the dispute.

(Policy Manual, ECF No. 62-9 at 18.)

The Policy Manual does not require Havtech to submit a commission dispute to AAON prior to filing suit against TKSA; nor do AAON's termination procedures set forth in the Policy Manual bar Havtech from filing suit against TKSA.  Further, even if the Policy Manual contained such provisions, TKSA fails to generate a genuine dispute of material fact as to its third-party beneficiary status.  TKSA is not named in the Policy Manual, points to no evidence in the record that specific provisions were inserted to the Policy Manual for its benefit, and no provisions in the Policy Manual suggest Havtech and AAON intended TKSA to be a primary party in interest.  *See 120 West Fayette and Johnson, supra.*

### 2.      *AAON's Termination Letter*

TKSA also maintains that Havtech's alleged failure to abide the procedures set forth in AAON's termination letter precludes Havtech's Motion and entitles TKSA to summary judgment on Counts V and VII.  (ECF No. 62-1 at 9-13, 27-28.)  Specifically, TKSA argues that it is entitled to summary judgment because, as to the Brunswick Project, Havtech failed to comply with AAON's termination letter because: (1) "it was classified as a buy-resell project" and (2) "the equipment was ordered outside the applicable period."  *Id.* at 28.  The termination letter provides in part:

By February 1st, 2022, Havtech must provide Matt Jones a list of projects that are in progress and are expected to be ordered from AAON within 90 days. This list shall include only orders that have been bid and are awaiting Purchase Orders. You have until April 14th, 2022 to enter orders for the projects on your protected list. These orders must be entered as commission orders for production within published lead times or sooner with shipping premiums. Buy-resell orders will not be allowed. After February 6th, 2022 Havtech will not be able to enter orders for any project that is not on the protected list.

…

Any commissions becoming earned and due to Havtech may be withheld by AAON and shall become due, if at all, only after a final reconciliation is performed by AAON. This reconciliation will occur on July 15th, 2022. In lieu of withholding the entire amount of such commissions, AAON may, at its option, withhold only that portion as AAON deems necessary for its financial protection.

(Termination Letter, Exhibit E, ECF No. 62-7.)

Based on AAON's termination letter, TKSA asserts that "Havtech lost any expected commissions relating to the Brunswick project when the equipment was ordered well outside the protection timeframe established by AAON." (ECF No. 62-1 at 28.) TKSA offers no basis on which reasonably to conclude that the termination letter affects TKSA's MTA contractual obligations to Havtech or its entitlement to pursue them. In other words, nothing in AAON's termination letter suggests that a failure on Havtech's part to comply with the termination procedure affects its entitlements under MTAs with TKSA. Further, as set forth above, there is no dispute that, in Buy-Resell transactions (at issue here), commissions are not paid by AAON; rather, commissions are decided between the representatives on their own and agreed upon through the MTA process. (Manross Dep. 109:15-22.) In sum, neither the Policy Manual nor AAON's termination letter impairs Havtech's entitlement to seek its requested relief from TKSA or otherwise forecloses Havtech's recovery as TKSA argues.

Accordingly, the court will deny TKSA's Cross-Motion as to Counts V and VI of the Amended Complaint.

### C.   **Havtech Motion**

Havtech seeks summary judgment on its breach of contract claims in Counts I through VI of the Amended Complaint.  (ECF No. 61-1 at 11-16.)  In response, TKSA argues that the MTAs are too indefinite and ambiguous to form binding agreements.  (ECF No. 62-1 at 6, 15.)

####   *1.    Breach of Contract – Liability[3]*

Havtech argues that it is entitled to summary judgment on Counts I through VI of the Amended Complaint because: (1) Havtech and TKSA agreed to split equally each project's total sales commission; (2) Havtech fulfilled its performance obligations; (3) TKSA has failed and refused to pay Havtech as agreed; and (4) TKSA, therefore, owes Havtech the amounts to which they agreed.  (ECF No. 61-1 at 11-16.)  In response, TKSA argues that the MTAs are too indefinite and ambiguous to form binding agreements.  (ECF No. 62-1 at 6, 15.)

In Maryland, "the interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law."  *Gresham v. Lumbermen's Mut. Cas. Co.*, 404 F.3d 253, 260 (4th Cir. 2005) (internal quotations omitted).  In *Goodman v. Resolution Trust Corp.*, the Fourth Circuit explained:

---

[3] When sitting in diversity jurisdiction, as the court does here, federal courts apply the choice-of-law rules of the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *DiFederico v. Marriott Int'l, Inc.*, 714 F.3d 796, 807 (4th Cir. 2013).  Maryland adheres to the doctrine of *lexi loci contractus*, which provides that "the law of the jurisdiction where the contract was made controls its validity and construction."  *Kramer v. Bally's Park Place, Inc.*, 311 Md. 387, 390 (1988).  "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs."  *Konover Prop. Tr., Inc. v. WHE Assocs.*, 142 Md. App. 476, 490 (2002) (citing *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 672 (1997), *cert. denied*, 348 Md. 205 (1997)).  The parties have not identified where the last act occurred.  "[B]ecause the parties implicitly agree that Maryland law governs their claims, [the court] need not inquire further into the choice-of-law questions."  *Vanderhoof-Forschner v. McSweegan*, 215 F.3d 1323, 2000 WL 627644, at *2 n.3 (4th Cir. 2000) (table opinion) (citing *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)).  Accordingly, the court will apply the substantive law of Maryland.

> A court faces a conceptually difficult task in deciding whether to grant summary judgment on a matter of contract interpretation. Only an unambiguous writing justifies summary judgment without resort to extrinsic evidence, and no writing is unambiguous if susceptible to two reasonable interpretations. The first step for a court asked to grant summary judgment based on a contract's interpretation is, therefore, to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face. If a court properly determines that the contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue. Even where a court, however, determines as a matter of law that the contract is ambiguous, it may yet examine evidence extrinsic to the contract that is included in the summary judgment materials, and, if the evidence is, as a matter of law, dispositive of the interpretative issue, grant summary judgment on that basis. If, however, resort to extrinsic evidence in the summary judgment materials leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact.

7 F.3d 1123, 1126 (4th Cir. 1993) (internal citations and quotations omitted).

"Under Maryland law, the elements of a claim for breach of contract are contractual obligation, breach, and damages." *Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 596 (D. Md. 2018). "To 'prevail on an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation.'" *Id.* (quoting *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (Md. 2001)). "In other words, '[i]t is the parties' agreement that ultimately determines whether there has been a breach.'" *Id.* (quoting *Mathis v. Hargrove*, 166 Md. App. 286, 318-19 (2005)).

"In ascertaining the parties' intent, Maryland follows the objective law of contract interpretation." *Taylor v. Taylor*, 147 Md. App. 350, 404 (2002). The Appellate Court of Maryland succinctly explained:

> Under this doctrine, when a contract is clear and unambiguous, "'its construction is for the court to determine.'" *Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 251, 768 A.2d 620 (2001) (citation

omitted). Moreover, the court is required to "give effect to [the contract's] plain meaning," without regard to what the parties to the contract thought it meant or intended it to mean. *Id.* at 251, 768 A.2d 620; *see PaineWebber Inc. v. East*, 363 Md. 408, 414, 768 A.2d 1029 (2001); *Ashton*, 354 Md. at 340–41, 731 A.2d 441; *Calomiris v. Woods*, 353 Md. 425, 436, 727 A.2d 358 (1999). Generally, "'it must be presumed that the parties meant what they expressed.'" *PaineWebber Inc.*, 363 Md. at 414, 768 A.2d 1029 (citations omitted); *Jones v. Hubbard*, 356 Md. 513, 533, 740 A.2d 1004 (1999). Put another way, the "'test of what is meant is . . . what a reasonable person in the position of the parties would have thought' the contract meant." *Society of Am. Foresters v. Renewable Natural Resources Found.*, 114 Md. App. 224, 234–35, 689 A.2d 662 (1997) (citation omitted).

*Id.*

In the instant case, each MTA is unambiguous as to whether Havtech and TKSA agreed to split commissions on a 50/50 basis. And, critically, there is no dispute of fact that (1) the parties agreed to split commissions on a 50/50 basis or (2) that TKSA has not paid Havtech accordingly. (Smithsburg MTA, ECF No. 61-3; Thurgood MTA, ECF No. 61-4; Pepco MTA, ECF No. 61-5; DC Prep MTA, ECF No. 61-6; Brunswick MTA, ECF No. 61-7; Nice Middleton MTA, ECF No. 61-8; Answer, ECF No. 60 ¶¶ 19, 24, 29, 34, 39, 44.)

That the "estimated commission due my company" amount identified on the MTAs was revised or changed during the progression of a project and the fact that MTAs may not set forth a formula to compute the "estimated commission due my company" does render the MTAs indefinite and ambiguous. *Hanna v. Bauguess*, 49 Md. App. 87 (1981) ; *Foard v. Snider*, 205 Md. 435, 445 (1954); *Robinson v. Gardiner*, 196 Md. 213, 217 (1950). The MTAs are sufficiently clear that Havtech and TKSA agreed to a commission split of 50/50; there is no dispute of fact that a 50/50 split was the parties' deal; and there is no dispute of fact that TKSA has not paid Havtech commissions on the MTAs at issue.

Accordingly, the court will grant the Havtech Motion as to liability on Counts I through VI of the Amended Complaint.

### 2.      *Breach of Contract – Damages*

Although Havtech is entitled to summary judgment on the issue of liability, TKSA disputes "that the alleged MTAs reflect the true commissions due." (ECF No. 62-1 at 17-18.)

"The measure of damages under Maryland law is well settled: In a breach of contract action, upon proof of liability, the non-breaching party may recover damages for 1) the losses proximately caused by the breach, 2) that were reasonably foreseeable, and 3) that have been proven with reasonable certainty." *Adcor Indus., Inc. v. Beretta U.S.A. Corp.,* 250 Md. App. 135, 154 (2021) (citations omitted). "In this context, 'proximate cause' means losses that actually resulted from the breach." *Id.* (citations omitted). "Losses that are speculative, hypothetical, remote, or contingent either in eventuality or amount will not qualify as 'reasonably certain' and therefore recoverable as contract damages." *Id.* (citations omitted).

The losses Havtech has suffered were plainly proximately caused by TKSA's failure to pay – in other words, Havtech's losses were proximately caused by TKSA's breaches of the MTAs and, as such, were reasonably foreseeable. Havtech's losses are not speculative, hypothetical or contingent. The amount of Havtech's losses, however, are subject to material dispute of fact.

Havtech contends that by the time each MTA order closed with the contractor, the estimated commission due became final. (Manross Dep. 71:5-72:16, 73:16-74:4.) TKSA provides evidence that the figure listed on the MTA was an estimate subject to revision based on the lumps and bumps of each project. (Sears Dep. 114:7-115:2, 139:17-141:2.)   In addition, while not dispositive, two MTAs – Smithsburg and Pepco – leave the "estimated commission due to my company" space blank. (Smithsburg MTA, ECF No. 61-3; Pepco MTA, ECF No. 61-5.) There

are genuine disputes of material fact regarding the amount of damages to which Havtech is entitled for Counts I through VI.  Accordingly, the Havtech Motion will be denied as to damages.

### D.   Unjust Enrichment Claim (Count VII)

Havtech pleads in the alternative a claim for unjust enrichment as to the Brunswick project.[4]  "In Maryland, '[t]he general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests.'"  *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593. 608 (D. Md. 2015) (quoting *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96 (2000)).  Because the court finds an enforceable contract exists on the Brunswick project, the court will dismiss the unjust enrichment claim in Count VII.  *AAC HP Realty, LLC v. Bubba Gump Shrimp Co. Restaurants*, 243 Md. App. 62, 71 (2019); *Jay Dee/Mole Joint Venture v. Mayor & City Council of Baltimore*, 725 F. Supp. 2d 513, 532 (D. Md. 2010); *J. Roland Dashiell & Sons, Inc.*, 358 Md. at 101.

## V.   CONCLUSION

For the reasons set forth herein, by separate order, Havtech's Motion will be granted as to liability on Counts I through VI, and otherwise denied.  TKSA's Cross-Motion will be denied as to Counts V and VII; Count VII will be dismissed.  This case shall proceed as to damages only as to Counts I through VI of the Amended Complaint.

_____/s/_____

Julie R. Rubin
United States District Judge

July 26, 2024

---

[4] "[A]lthough [plaintiff] may not recover under both contract and quasi-contract theories, it is not barred from pleading these theories in the alternative where the existence of a contract concerning the subject matter is in dispute." *Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F.Supp.2d 785, 792 (D. Md. 2002).